# EXHIBIT

# C

# CONTRACT OF SALE

**AGREEMENT** made and dated this __6__ day of July, 2026 *("Effective Date")* by and between: **ARTETA, LLC,** (hereinafter and collectively referred to as "Seller"), a New York Limited Liability c/o Bronson Law Offices P.C. 480 Mamaroneck Ave Harrison NY 10528*;* and **ST. TROPEZ CONTRACTS LLC** (hereinafter referred to as "Purchaser"), a New York Limited Liability Company with its principal place of business located at 3 E. Evergreen Rd SUITE 101 #1045, New City, NY 10956.

.

## WITNESSETH:

**WHEREA**S, Seller is the owner of the improved real property located at 51 South Route 9W, West Haverstraw, New York 10923 (Tax lot designation: Section 26.07, Block 3, Lot 1) hereinafter described, in the Village of West Haverstraw, County of Rockland, State of New York (hereinafter referred to as the "Premises") (See Exhibit **"A"** for the Legal Description of the Premises);

**WHEREA**S, Seller has agreed to sell the Premises to Purchaser and Purchaser has agreed to purchase the Premises from Seller; and

**WHEREAS**, the parties are desirous of reducing the agreement to sell and to purchase to writing.

**WHEREAS,** The Seller is in Chapter 11 Bankruptcy and Court approval is required for this Agreement.

**NOW, THEREFORE**, in consideration of the mutual promises hereinafter set forth, the parties hereby agree as follows:

**1)** **THE TRANSACTION**: Seller agrees to sell, and Purchaser agrees to purchase, the Premises.

**2)** **PRICE**: The price is **ONE MILLION SIX HUNDRED THOUSAND ($1,600,000.00) DOLLARS**, to be paid as follows:

a. **EIGHTY THOUSAND ($80,000.00) DOLLARS** on the signing of this Contract, by check subject to collection, the receipt of which is hereby acknowledged by Seller, and which sum is to be held in escrow by Bronson Law Offices P.C. (hereinafter referred to as "Escrowee"), until title closing; or until this Contract shall be otherwise rendered null and void pursuant to its terms or Purchaser terminates this Contract in

accordance with this Agreement in its sole discretion, whereupon Escrowee shall immediately return the deposit to Purchaser without any deductions or conditions.

b. **ONE MILLION FIVE HUNDRED TWENTY THOUSAND ($1,520,000.00) DOLLARS** by bank or certified check, to be delivered at title closing as hereinafter set forth.

**3)** **ACCEPTABLE FUNDS:** All money payable under this Contract, unless otherwise specified, shall be either:

a. Cash, but not over ONE THOUSAND ($1,000.00) DOLLARS;

b. Good certified check of Purchaser, or official check of any bank, savings bank, trust company, or savings and loan association having a banking office in the State of New York; or as otherwise agreed to in writing by Purchaser's attorney and Seller's attorney.

**4)** **DEPOSIT REFUNDABILITY.** The Deposit shall be fully refundable to Purchaser unless and until: (i) the Bankruptcy Court has entered the Bidding Procedures Order, reasonably acceptable to Purchaser, (a) authorizing the Seller to conduct the sale process in accordance with the Bidding Procedures for the auction (the "Auction"), and sale of the Premises free and clear of all liens, claims, encumbrances, and interests (collectively, "Liens"), (b) approving the Bidding Procedures, (c) authorizing and approving the Seller's entry into the Contract of Sale (the "Stalking Horse Contract"), between the Seller and St. Tropez Contracts LLC (the "Stalking Horse Bidder" or the "Purchaser"), (d) approving the bidding protections for the Stalking Horse Bidder; (e) scheduling the Auction and hearing for approval of the proposed sale (f) authorizing and approving the form and manner of notice of the Auction and Sale Hearing (the "Sale Notice"), and such Sale Order has not been stayed, reversed, or modified and such appeal period has passed. In the event the Sale Order is not entered, is stayed, or is not in form acceptable to Purchaser, or if title cannot be delivered free and clear as required herein, the Deposit shall be returned to Purchaser in full within five (5) business days. Notwithstanding the above, the Purchaser shall have a period of no less than forty-five (45) days from the Execution Date of this Contract (the "Violations Clearance Period") within which to obtain clearance from the Village of West Haverstraw of all existing violations of record affecting the Premises. The Deposit shall become non-refundable upon the later to occur of (i) forty-five (45) days after the Effective Date of this Agreement and (ii) the entry by the Bankruptcy Court of an order approving Purchaser as the Stalking Horse Buyer for the Premises, plus the expiration of the fourteen (14) day period for filing an appeal of such order without any appeal having been filed; provided, however, that in no event shall the Deposit become non-refundable earlier than forty-five (45) days from the

Execution Date of this Agreement. The Deposit becoming non-refundable shall be subject only to the conditions set forth in this Agreement, including the contingencies set forth in Section 37(e) below.

**5)** **<u>"SUBJECT TO" PROVISIONS</u>**: The Premises are to be transferred free and clear of any interest in such property of an entity other than the Seller, except for:

a. Rights of record, if any, acquired by any utility company to maintain and operate lines, wires, cables, poles and distribution boxes, in, over and upon the Premises.

b. Conditions Precedent to Closing. Notwithstanding anything to the contrary in the Agreement, Purchaser's obligation to close is expressly contingent upon the satisfaction (or waiver by Purchaser) of each of the following conditions: (i) the Bankruptcy Court shall have entered a final, non-appealable Sale Order approving the sale of the Premises to Purchaser, and such Sale Order shall not have been stayed, reversed, modified, or amended; (ii) the Bankruptcy Court shall have approved Purchaser as the successful (winning) bidder for the Premises and as the approved purchaser thereof; and (iii) title to the Premises shall be conveyed to Purchaser free and clear of all liens, mortgages, judgments, mechanic's liens, tax liens, environmental liens, encumbrances, claims, and any other interests of any kind or nature whatsoever. In the event any of the foregoing conditions is not satisfied or waived, the Deposit shall be returned to Purchaser in full within five (5) business days.

**6)** **<u>TITLE COMPANY APPROVAL:</u>**

a. Seller shall give and Purchaser shall accept, a bankruptcy court order as to the sale being free and clear which will be reasonably acceptable to a New York State Licensed Title Insurance Company engaged by Purchaser, at standard rates, , subject only to standard exceptions and to the matters provided for in this Contract.
b. If a major Title Insurance Company refuses to insure the title, Purchaser shall be entitled to return of Purchaser's deposit.
c. If Purchaser's Title Insurance Company reasonably raises legitimate title objections and refuses to insure, Purchaser shall have the option to either (i) cancel the contract and receive a return of the down payment or (ii) proceed with closing if Seller is able to obtain title insurance from another New York State licensed title insurance company in accordance with Subparagraph "a" of this Section 6.

**7)** **<u>ENVIRONMENTAL WAIVER AND RELEASE</u>.** Seller represents and warrants that: (i) it has no knowledge of any environmental contamination or violations of environmental laws with respect to the Property; (ii) there is no pending or threatened litigation affecting the Property, other than the foreclosure litigation; (iii); (iv) there are no leases, tenancies or occupancy agreements affecting the Property except as disclosed in writing to Purchaser;; (vi)

Seller has full authority to execute this Contract subject to bankruptcy court approval; and (vii) all information provided regarding the Property, is accurate and complete. These representations and warranties shall survive closing for a period of twelve (12) months.

8) **CLOSING DEFINED AND FORM OF DEED:** "Closing" means the settlement of the obligations of each party to the other under this Contract, subject to the following conditions precedent to Purchaser's obligation to close: (i) payment of the balance of the purchase price to Seller; (ii) delivery to Purchaser of a Bargain and Sale Deed with Covenants Against Grantor's Acts in proper statutory form for recording so as to transfer to Purchaser full ownership (fee simple title) to the Premises, free of all encumbrances except as herein stated; (iii) title company's commitment to issue title insurance policy subject only to permitted encumbrances; (iv) no material adverse change in the physical condition or financial performance of the Premises; (v) all Seller's representations remaining true and correct; and (vi) no breach of Seller's covenants. The Deed will contain a covenant by Seller as required by Section 13 of the Lien Law of the State of New York.

9) **CLOSING DATE AND PLACE:**
Notwithstanding any provision in the Agreement to the contrary, the Closing shall occur no later than sixty (60) days after the date on which both of the following have occurred (the "Approval Date"): (i) the Bankruptcy Court has entered the Sale Order approving the sale of the Premises to Purchaser, and such Sale Order has become final and non-appealable and has not been stayed, reversed, modified, or amended; and (ii) the Bankruptcy Court has approved Purchaser as the successful (winning) bidder for the Premises. Purchaser shall provide Seller with written notice of the Approval Date within five (5) business days after such date, and the Closing shall occur no later than sixty (60) days thereafter.

10) **BROKER**: Purchaser hereby states that Purchaser has not dealt with any broker in connection with this sale other than ROYAL PROPERTIES. Seller shall pay all brokerage commissions in connection with this transaction to the extent approved by the bankruptcy court and shall indemnify and hold Purchaser harmless from any claims, costs, or liabilities relating to brokerage commissions or finder's fees.

11) **INSTALLMENT ASSESSMENT**: If, at the time of Closing, the Premises are affected by any assessments which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then, for the purposes of this Contract, all the unpaid installments shall be apportioned between Seller and Purchaser as of the Closing date, with Seller responsible for all installments attributable to periods prior to Closing.

12) **CLOSING APPORTIONMENTS**: Seller and Purchaser shall apportion all real estate

taxes upon the Premises, at Closing, in accordance with the customs in Rockland County, New York. Any errors or omissions in computing apportionments at Closing shall be corrected; this **errors** provision shall survive Closing for a period of ninety (90) days. State, County and Town taxes shall be apportioned on a calendar year basis, and School taxes shall be apportioned September 15 through August 31. The following items shall be apportioned as of 11:59 PM the day before closing:
(a) Real estate taxes and assessments;
(b) Utility charges;
(c) Insurance premiums;
(d) Security deposits and prepaid rents

**13)** **TITLE COMPANY AFFIDAVIT** Seller shall execute standard affidavits required by Title.

**14)** **DEED TRANSFER, RECORDING TAXES AND OTHER CLOSING DOCUMENTS:**

a. At Closing, Seller shall pay all applicable NYS transfer taxes, if any, payable by reason of the delivery or recording of the Deed, and shall deliver a check payable to the order of the appropriate State or County office, or to the Title Insurance Company employed by Purchaser, together with any required tax returns. Seller shall indemnify, defend and hold Purchaser harmless from any transfer tax liability, including reasonable attorneys' fees and costs incurred in connection with such liability. Purchaser has been advised that the Seller may not be liable for transfer taxes pursuant to the Bankruptcy Code.
b. Purchaser and Seller agree to duly complete the tax return TP-584 and a New York State Equalization and Assessment Form, and to cause the check in payment of transfer tax, (if any) and the tax return to be delivered to the Title Insurance Company representative at the Closing.
c. Purchaser shall be responsible for payment of all fees and charges necessary to record the Deed.
d. Seller shall deliver, at Closing, in the event that the Closing documents shall be executed by Seller's Attorney-in-Fact, a duly executed original Power of Attorney, in recordable form.
e. Seller's representations, warranties and covenants shall survive closing for a period of twelve (12) months. Delivery and acceptance of the Deed shall not merge or extinguish any obligations of Seller that are expressly stated to survive closing.

**15)** **DEED DESCRIPTION, POSSESSION:** Seller shall, at Closing of Title, include in the Deed of Conveyance such description of the Premises as may be required by the Title Company insuring the conveyance of title; provided, however, that any new survey for the Premises shall also be certified to Seller.

16) **<u>CONDITION OF PROPERTY</u>:** Purchaser shall have the right to inspect the Premises from time to time at reasonable times. Seller represents that it has disclosed all material defects in the Premises known to Seller. The Property is being sold "as is" "where is".

17) **<u>SELLER'S REPRESENTATIONS:</u>**

Seller represents and warrants as follows:

a. Seller is the sole fee title owner of the Premises and has full power and authority to execute and deliver this Contract and to perform all obligations hereunder subject to Bankruptcy Court approval. s. The execution and delivery of this Contract and the consummation of the transactions contemplated hereby have been duly authorized by all necessary action on the part of Seller, except for bankruptcy Court approval which shall be sought immediately upon execution of this Agreement.
b. Seller represents and warrants that: (i) the Property is being sold free and clear and Seller has not received any notices of condemnation or eminent domain proceedings affecting the Premises.
c. Seller represents and warrants that there are no rents.
d. The real estate taxes are of public record.
e. Seller represents and warrants that to its knowledge (a) there are no underground fuel tanks at the premises,(b) Seller has received no notices of environmental violations or investigations; (c) no hazardous materials have been stored, disposed of, or released on the property,
f. Seller represents and warrants that the premises are properly connected to and serviced by municipal sewer and water, that all connection fees and assessments have been paid in full, and that all such services are in good working order and comply with applicable laws and regulations.
g. Seller represents that the property abuts to a public street, which is municipally maintained.
h. Seller represents that any plans/permits and other documents if any for approval for the warehouse, as necessary, shall be transferred and assigned to the Purchaser.

**18. <u>PURCHASER'S REPRESENTATIONS AND CLOSING CONDITIONS</u>**: Purchaser represents and warrants that it has sufficient liquid assets to enable Purchaser to close title on a cash basis, with no financing from any source. (b) Purchaser's obligation to close shall be conditioned upon: (i) title being free of liens and encumbrances except for permitted exceptions; (ii) no material adverse change occurring to the property prior to closing.

**19. <u>DISPUTES</u>**: The parties agree that in the event there are any disputes in connection with this Contract which results in litigation, such litigation shall be brought in any court of competent jurisdiction in the State of New York including the bankruptcy courts, which might have exclusive jurisdiction during the term of the bankruptcy. Each party hereto waives a trial by jury in any such

litigation. The prevailing party shall be entitled to recover, in addition to any other relief it may receive, its reasonable attorney's fees, costs, and expenses (including expert witness fees), in an amount to be fixed by the Court.

**20**. **DUTIES OF ESCROWEE**: The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, that Escrowee shall be a neutral third party, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. Each party shall severally (but not jointly) indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder that arise from such party's actions or omissions, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this Contract or involving gross negligence on the part of Escrowee.

**21**. **ENTIRE AGREEMENT**: All prior understandings and agreements between Seller and Purchaser are merged in this Contract, and this Contract completely expresses their full agreement, provided however that all representations, warranties and covenants made by Seller in this Contract shall survive closing for a period of twelve (12) months. This Contract has been entered into after full investigation, neither party relying upon any statements made by anyone else that is not set forth in this Contract. There are no representations, oral or written, other than those reflected and stated in this Contract upon which either party has relied in entering into this transaction. This clause shall survive delivery of the Deed.

**22**. **SINGULAR ALSO MEANS PLURAL**: Any singular word or term herein shall also be read as in the plural, and the neuter to be feminine or masculine, whenever the sense of this Contract may require it.

**23**. **NOTICES:**

a. Any notice, request, instruction or document to be given hereunder by either party to the other party shall be in writing and delivered personally or mailed, first class certified mail, postage prepaid, and via email as follows:

If to Seller, addressed to:

Arteta, LLC
c/o Bronson Law Offices PC
480 Mamaroneck Ave
Harrison NY 10528
hbbronson@bronsonlaw.net

With a copy to Seller's attorney, addressed to:

Thomas Fogarty: tommyfogarty@yahoo.com

If to Purchaser, addressed to:

St. Tropez Contracts LLC
c/o Mark Yunger
**3 E. Evergreen Rd SUITE 101 #1045**
**New City, NY 10956**

With a copy to Purchaser's attorney, addressed to:

Irina Moin, Esq.
The Law Office of Irina Moin, LLC
12 Broad Street, Suite 202
Red Bank, New Jersey 07701
(732) 413-8272
Irinamoin@moinlawgroup.com

B. Either party hereto shall have the right to give notice, in accordance with the terms of Section “a” above, to the other party changing its address as stated above and such address shall thereupon be deemed to be changed accordingly. Notices may also be given by, or to, each party's respective attorney. Notice by facsimile transmission or email shall be valid, and shall be effective when received, with electronic delivery receipt or written confirmation of delivery constituting proof of receipt.

C As used in this Contract, the term "business day" or "business days" shall mean any day other than a Saturday, a Sunday, a day on which national banks in the State of New York are authorized or required by law to be closed, or any Jewish holiday on which observant Jews are prohibited from conducting business or transacting commerce, including, without limitation, Rosh Hashanah, Yom Kippur, the first two and last two days of Sukkot, Shemini Atzeret, Simchat Torah, Tisha B'Av, the first two and last two days of Passover, and Shavuot (each such holiday to be measured from sundown on the preceding day through nightfall on the holiday). Any act, payment, notice, or obligation required to be performed under this Contract on a day that is not a business day shall be deemed timely if performed on the next succeeding business day.

**24**. **COUNSEL**: Each party to this Contract represents to the other party that they have been represented in this transaction by counsel of their own choice and have consulted such counsel before entering into this Contract. This clause shall survive delivery of the Deed.

**25**. **AGREEMENT BINDING**: This Contract shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and permitted assigns.

**26**. **TITLES**: The titles or headings of Articles in this Contract are for convenience of reference and shall not be deemed to modify or affect the interpretation of this Contract.

**27.** **CHANGES IN WRITING**: Neither this Contract, nor any provision hereof, shall be modified, changed, discharged, or terminated except by an instrument in writing signed by the party against whom the enforcement of any modification, change, discharge or termination is sought.

**28**. **ADDITIONAL ACTS**: In connection with the transaction contemplated by this Contract, the parties hereto agree to execute such additional documents and papers and to perform and do such additional acts and things as may be reasonably necessary and proper to effectuate and carry out the transactions contemplated by this Contract.

**29**. **WAIVER:** No delay or omission on the part of either party in exercising any right shall operate as a waiver of such right or any other right. A waiver on any one occasion shall not be construed as a bar to, or waiver of, any right on any future occasion.

**30**. **ASSIGNMENT**: This Contract may be freely assigned by Purchaser to any affiliated entity or subsidiary without Seller's consent, provided they are a disinterested party under the bankruptcy code. Any other assignment shall require Seller's prior written consent, which shall not be unreasonably withheld, delayed or conditioned.

**31**. **OFFER TO TRADE**: The delivery of these Contracts by the attorney for Seller to the attorney for Purchaser shall not be construed as an offer, but rather only as an invitation to trade. This Contract shall not be binding upon Seller until it has executed the same and a fully executed copy has been delivered to the attorney for Purchaser, and the bankruptcy Court has approved.

**32**. **IRC SECTION 6045(e):** Each party shall execute, acknowledge and deliver to the other party such instruments and take such other actions, as such other party may reasonably request in order to comply with the IRC Section 6045(e), as amended, or any successor provision or any regulations promulgated pursuant thereto, insofar as the same requires reporting of

information in respect of real estate transaction. The provisions of this Paragraph shall survive Closing. For the provisions of this Paragraph, Purchaser and Seller shall supply their Federal Tax Identification numbers next to their signatures.

**33**. **DEFAULTS BY PURCHASER**: In the event either party defaults under this Agreement, the non-defaulting party shall provide written notice of such default. The defaulting party shall have fifteen (15) business days after receipt of notice to cure such default. If the default is not cured within such period, the non-defaulting party may terminate this Contract and pursue all available remedies at law or in equity. If Seller defaults, Purchaser shall be entitled to return of its down payment.

In the event of Purchaser's default, Seller's sole remedy shall be to retain the deposit as liquidated damages. The parties agree that actual damages would be difficult to ascertain and that the deposit represents a reasonable estimate of Seller's damages. The amount retained shall not be considered a penalty.

**34**. **GOVERNING LAW**: This Contract shall be governed by, and construed and interpreted according to, the Laws of the State of New York.

**35**. **INSPECTIONS**: Purchaser shall have the right to conduct a reasonable number of inspections of the Premises, including but not limited to structural condition, environmental issues, radon, water meter readings, zoning compliance, permits, and tax assessments, at its own expense within thirty (30) business days of this Contract.

**36.** **APPROVALS:** To the extent Seller has in its possession, Seller hereby assigns, transfers and conveys to Purchaser, if available, effective at Closing, all plans, permits, approvals, variances, special exceptions, site plan approvals, subdivision approvals, and any and all other governmental approvals, licenses, permits, and entitlements of any kind (collectively, "Approvals") relating to the development of the Premises for an aggregate of eighty-one thousand five hundred (81,500) square feet of space, which includes ten thousand (10,000) square feet of office space and seventy-one thousand five hundred (71,500) square feet of additional approved space (the "Approved Development").

At Closing, Seller shall deliver to Purchaser executed originals or certified copies of all Approvals, if available, together with all related application materials, architectural plans, engineering drawings, surveys, environmental reports, traffic studies, and other documentation submitted to or received from any governmental authority in connection with the Approvals. Seller shall execute such additional documents as may be reasonably necessary to effectuate the assignment of the Approvals to Purchaser.

**37.** **STALKING HORSE PROTECTIONS; BREAKUP FEE; EXPENSE REIMBURSEMENT; MINIMUM OVERBID.**

a) Stalking Horse Designation. Purchaser is hereby designated as the Stalking Horse Purchaser for the sale of the Premises pursuant to Section 363 of the Bankruptcy Code. Seller shall seek Bankruptcy Court approval of the bidding procedures and Purchaser's stalking horse protections as set forth herein as part of the Sale Motion.

b) Notice of Hearing. Seller shall provide Purchaser with notice of the date on which any motion relating to the sale of the Premises is to be heard by the Bankruptcy Court, and such notice shall be given to Purchaser simultaneously with, and in the same manner as, the notice Seller receives or provides with respect to such hearing.

c) Breakup Fee. In the event that the Bankruptcy Court approves the sale of the Premises to a party other than Purchaser at a higher purchase price (an "Overbid"), and Purchaser elects, in its sole and absolute discretion, not to participate in the auction or bidding process, Purchaser shall be entitled to receive from Seller, as a first-priority administrative expense of the bankruptcy estate: (i) a breakup fee equal to three percent (3%) of the Winning Bid, (the "Breakup Fee"); and (ii) reimbursement of all reasonable and documented out-of-pocket due diligence costs, legal fees, and expenses incurred by Purchaser in connection with the Agreement ("Expense Reimbursement"), without cap, upon submission of reasonable documentation thereof. The Breakup Fee and Expense Reimbursement shall be payable to Purchaser simultaneously with or immediately upon the closing of the competing sale and shall not be subject to any offset, reduction, or condition.

d) Minimum Overbid. The initial competing bid submitted at auction must exceed the Purchase Price by an amount sufficient to cover, at minimum: (i) the Breakup Fee of $48,000.00; (ii) an estimated Expense Reimbursement; and (iii) an additional overbid increment of not less than Fifty Thousand Dollars ($50,000.00) above the Purchase Price, for a minimum first overbid of not less than One Million Six Hundred Ninety-Eight Thousand Dollars ($1,698,000.00), or such greater amount as the Bankruptcy Court may require (the "Minimum Overbid"). Thereafter, in each subsequent round of bidding, each successive overbid (whether by a competing bidder or by Purchaser) must exceed the then-highest Qualified Bid by a minimum bid increment equal to Fifty Thousand Dollars ($50,000.00), or such lower amount determined by the Debtor in its discretion or as set forth in the Bidding Procedures.

e) <u>Deposit Protections.</u> The Deposit shall at all times be held in escrow by Seller’s counsel in its IOLA account at JP Morgan Chase, without interest and shall not be released to Seller unless and until all conditions to Closing set forth in this Agreement have been satisfied, including entry of a final, non-stayed Sale Order acceptable to Purchaser. In the event of a competing sale or failure of any closing condition set forth herein, the Deposit shall be returned to Purchaser in full within three (5) business days without. In the event of dispute, the Bankruptcy Court will determine the disposition of the deposit.

f) <u>Sale Order; Free-and-Clear Title; No Assumed Liabilities.</u>

Sale Order. It shall be an express condition to Purchaser's obligation to close that the Bankruptcy Court shall have entered a Sale Order, in form and substance reasonably acceptable to Purchaser, which Sale Order shall: (i) authorize and approve the sale of the Premises to Purchaser free and clear of all liens, claims, charges, mortgages, pledges, security interests, judgments, mechanic's liens, materialmen's liens, tax liens, environmental liens, encumbrances, interests of any kind, and any successor liability, pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code; (ii) provide that Purchaser shall have no successor liability of any kind with respect to any claims, liabilities, obligations, or causes of action arising from or related to Seller's ownership or operation of the Premises prior to Closing; (iii) contain findings that Purchaser is a good-faith purchaser entitled to the protections of Section 363(m) of the Bankruptcy Code; and (iv) be consistent with the stalking horse protections set forth in this Agreement, including approval of the Breakup Fee and Expense Reimbursement as administrative expenses of the estate.

g) Non-Stay Condition. It shall be an additional express condition to Purchaser's obligation to close that: (i) the Sale Order shall have been entered by the Bankruptcy Court and shall not have been reversed, modified, amended, or stayed by any court of competent jurisdiction; (ii) the time to appeal, seek rehearing, or petition for certiorari with respect to the Sale Order shall have expired with no such action having been taken, or the Sale Order shall have otherwise become final and non-appealable; and (iii) no governmental authority or other person shall have issued any order, injunction, or decree preventing or restraining the consummation of the transactions contemplated by this Agreement. Purchaser may, in its sole discretion, waive the requirement that the Sale Order be final and non-appealable and proceed to Closing under the protection of Section 363(m) of the Bankruptcy Code.

h) No Assumed Liabilities. Purchaser shall not assume, and shall have no liability for, any liabilities, obligations, claims, debts, contracts, leases, or other commitments of Seller of any kind or nature whatsoever, whether known or unknown, contingent or fixed, relating to or arising from the Premises or Seller's business or operations prior to Closing. The sale of the Premises shall be strictly an "as-is" sale free and clear of all liabilities, and the Sale Order shall so provide

**IN WITNESS WHEREOF**, this Contract has been duly executed by the parties hereto.

**SELLER:**

**ARTETA, LLC**

By:________________________________

**PURCHASER:**

**ST. TROPEZ CONTRACTS LLC**

Signed by:

By:________________________________
B19747A8E737495...
Mark Yunger, CEO